408 So.2d 71 (1981)
June MILLIEN and Joachim Larry Millien
v.
STATE of Mississippi, Forrest County Department of Welfare and Robert Taylor, Guardian Ad Litem.
No. 53057.
Supreme Court of Mississippi.
December 23, 1981.
Rehearing Denied January 20, 1982.
Rex K. Jones, Hattiesburg, for appellants.
Katie Smith Matison, William Robert Taylor, Jr., Hattiesburg, for appellees.
Before PATTERSON, SUGG and LEE, JJ.
*72 SUGG, Justice, for the Court:
The parental rights of Larry and June Millien were terminated by separate decrees of the Chancery Court of Forrest County with different chancellors rendering the decrees. June Millien appeals from a decree rendered by Chancellor Michael Sullivan terminating her parental rights to two of her children. Larry Millien appeals from a decree sustaining a General Demurrer to his Petition For Leave to File a Bill of Review of a decree rendered by Chancellor Patterson terminating his parental rights to his son and stepdaughter. We reverse and render.
On March 8, 1978 the Assistant District Attorney of the Twelfth Circuit Court District filed a Petition to Terminate the Parental Rights of Appellants. The children involved were Larry Millien, Jr., the son of appellants, and Connie Vandeveer, the daughter of June Millien and the stepdaughter of Larry Millien. The petition alleged that: (1) Larry Millien was under an indictment by the Forrest County Grand Jury on a charge of child abuse against Connie Vandeveer for an incident that occurred on October 22, 1977; (2) appellants left the children at their residence without adult supervision, without adequate heat when the outside temperature was near freezing, and failed to return for a period of approximately six hours; (3) appellants were mentally, morally, and otherwise unfit to rear and train the children.
Temporary custody of the children was granted to the Director of the Forrest County Welfare Department on March 4, 1978. A decree pro confesso was entered against Larry Millien on October 18, 1978 and a final decree was entered on the following day terminating the parental rights of Larry Millien to the two children. Larry Millien filed a motion to set aside the decree pro confesso on October 27, 1978.
On April 27, 1979, Chancellor Michael Sullivan entered a decree terminating the parental rights of June Millien to the two children, "subject to periodic review by this court on its own motion." The decree then granted June Millien reasonable visitation rights with the children but provided that visitation should not take place in the presence of Larry Millien because his parental rights had been terminated. June Millien filed a petition to modify the April 27 decree on October 11, 1979. All of the above proceedings were in cause No. 36,005 in the Chancery Court of Forrest County.
Larry Millien filed a Petition For Leave to File a Bill of Review for error apparent on the pleadings and decree and on the basis of newly discovered evidence. Millien alleged that no evidentiary hearing was conducted in the case against him which resulted in the final decree of October 19, 1978 terminating his parental rights. On June 19, 1980 Chancellor Howard Patterson sustained a General Demurrer to the Petition For Leave to File a Bill of Review.
The Petition For Leave to File a Bill of Review was assigned Cause No. 39,323, and was consolidated with No. 36,005 for appeal to this Court.

I. JUNE MILLIEN'S APPEAL
June Millien's Petition to Modify was heard on June 10, 1980. At the conclusion of the hearing Chancellor Michael Sullivan rendered the following opinion:
BY THE COURT:
The initial reaction based on the testimony is that the burden of proof has not been met for a modification. In fact, the testimony substantially seems to be that there's been absolutely no change in circumstances, and the Court has now become somewhat more concerned about the existing order. Though there is no prayer that it be modified from the standpoint of the State.
BY MR. PHILLIPS:
If it please the Court, I was going to make that urgent on the Court if you gave me the opportunity. It is affirmatively pled in the amended answer that the final order be rendered and the final  that a permanent order be entered forever terminating the rights. That is affirmatively pled.
BY THE COURT:

*73 I'll plow through all of this and try to find it.
BY MR. JONES:
If the Court please, of course, our position would be that the affirmative relief can't be granted except on cross bill, as I understand the rules and procedures.
BY THE COURT:
I think that's probably correct. However 
BY MR. JONES:
I think we're sitting right where we were with the welfare  I mean that would be 
BY THE COURT:
Based on the testimony that I have heard today, though, the consistent attitude of the petitioner and petitioner's chief witness toward court orders that are not favorable to him from the City Court to the Supreme Court. I have grave doubt about the advisability of allowing continuing visitation under the aegis of the particular welfare department worker that testified here today considering her somewhat happy go lucky view of court orders. Petition to modify particularly based on the fact that the testimony indicates no change in circumstances except an increase, perhaps an increase in the income, and the change in the location of the living quarters of the parties. Particularly Mrs. Millien. I'll try to limit it to that. When the Court is faced with returning the children to a home wherein lives a party where this Court through another branch, namely the order of Judge Patterson, has permanently terminated the parental rights of the other parent living there. If this Court were to find, and this is not to say that the Court has so found, that a change in circumstances did exist that would justify returning the children to Mrs. Millien, it could not do so in the face of the direct order of a co-equal court terminating parental rights of Mr. Millien with Mr. Millien in the home. To do so would make a joke of the order of Judge Patterson. For that, and for the reason that the burden of proof in this Court's opinion has not been met, for the modification at this time, the petition to modify is denied. The Court will still reserve handing down a memorandum opinion until he's had an opportunity to read its last decree, and review the exhibits and testimony concerning the visitation. It was the view of this Court in the Mrs. Millien case, and the Mrs. Millien case only, because I did not hear the Mr. Millien case, coinciding with that of the Welfare Department that if possible, the best interest of the children would be served by returning the children to their parent, if and when it could be shown that it could be done without it being to the detriment of the best interest of the children, and I am by no stretch of the imagination convinced that such circumstances presently exist. In fact from the testimony, I'm not too sure that they ever will, and if that is to be the case, continued visitation seems to be a cruel and unusual thing to do with the mother, and to the children. I'll deny the modification request, and reserve ruling on whether or not to allow the continued visitation. I will try to notify Mr. White, Mr. Jones, and Mr. Taylor, the Guardian Ad Litem by Thursday.
On August 13, 1980 the court entered a final decree terminating the parental rights of June Millien to the two children and placed the children in the custody of the Forrest County Department of Public Welfare, "until such time as they may be placed for adoption."
The evidence at the June, 1980 hearing is summarized as follows. June Millien was married twice, and three children were born during her first marriage, one of whom died in infancy. Her oldest son, Shannon Vandeveer, was living with his father in Chicago by agreement of the parties, and Connie Vandeveer lived with the appellants from the time of their marriage until she was placed in the custody of the welfare department. Larry Millien has been previously married and the two children of that marriage had lived with appellants since 1977.
*74 After the children were placed in the custody of the Welfare Department in March, 1978 by a temporary order, June Millien took the children to Chicago in defiance of the order, was arrested, and brought back to the state. June stated she was placed in jail for kidnapping, child abuse and contempt of court. She remained in jail for several months and the charges against her were dismissed.
Larry Millien was indicted in 1977 on a charge of child abuse involving his stepdaughter, Connie Vandeveer. This indictment was retired to the files, and according to the assistant district attorney the state decided to seek termination of his parental rights rather than to prosecute him criminally. Larry testified in detail about this incident and stated Connie was burned when she pulled a pot of water off the stove which spilled on her. His explanation of this event was plausible and was not seriously controverted by the evidence for the state. June Millien was not present when this incident occurred.
The only other charge of unfitness arose from an incident that occurred on March 4, 1978 when officers picked up the children at the apartment of the appellants late at night. Appellants testified that their neighbor had agreed to look after the children while they went to purchase groceries and run errands. They testified that the apartment was heated by central heat which was controlled by a thermostat and the heating unit was working when they left the apartment. The neighbor testified that she did not agree to look after the children, but gave a statement to officers on March 6 that she agreed to watch the children for appellants. She testified she checked on the children at thirty minute intervals until the officers came about midnight to get the children. In her written statement she said appellants left the apartment about 9:15 p.m. but in her testimony stated they left about 7:30 p.m. Of course, appellants should not have left the children unattended in the apartment and remained absent for a period of five or six hours, but this one incident is not sufficient ground upon which to terminate the parental rights of June Millien.
The Welfare Department recommended that the children be returned to appellants under supervision for a period of approximately six months. Appellants had purchased a home, owned two automobiles, were both working, and were financially able to take care of the children in question. At all times the two children of Larry Millien had resided with them and no effort was made to terminate the parental rights as to these two children.
Larry Millien was sentenced to jail for 30 days for contempt of court because he interrupted a ceremony in January, 1980 held in the courtroom when the oath of office was being administered to some elected officials.
The assistant district attorney testified that Larry Millien had complained to him that June was bringing marihuana to the apartment and entertaining men in the apartment during his absence. There was no other proof of these assertions. The above facts were brought out at the only evidentiary hearing on the question of terminating the parental rights of June Millien.
We are of the opinion that the trial court should have returned custody of the children to June Millien. It was not necessary for her to show a change in condition from the rendition of April 27, 1979 decree because it was a nullity. The decree terminated her parental rights subject to periodic review by the court on its own motion and then provided for visitation rights with the children. This is an unusual decree and we find no cases in this state or in other jurisdictions where a similar decree dealing with termination of parental rights has been entered. When a decree terminating parental rights is entered, it either terminates the parental rights or it does not. This decree does neither. It terminates parental rights and then grants visitation to the parent which contradicts termination of parental rights. We therefore conclude that the decree has no force and effect whatever and hereby set it aside.
*75 June Millien has not abandoned the two children involved. Absent an abandonment, it was necessary to prove, under Section 93-15-1 Mississippi Code Annotated (1972), that June Millien was, "mentally, morally, or otherwise unfit to rear and train" the two children. There is no evidence that June Millien was mentally unfit to rear and train the children. Petitioner failed to show by a preponderance of the evidence that she was morally or otherwise unfit to rear and train the children. Obviously, the real reason the chancellor terminated her parental rights was because she was living with her husband whose parental rights had been terminated by another chancellor, and the children would necessarily be in the home with the father. This is no reason to terminate the parental rights of the mother.
We therefore reverse and direct that Larry Millien, Jr. and Connie Vandeveer be returned to the custody of June Millien. It was stated in the brief filed on behalf of June Millien that she had filed a suit for a divorce after the decree appealed from was entered. If there is any controversy between appellants as to the custody of their child, Larry Millien, Jr., custody between them should be adjudicated in that case or in some other appropriate action.

II. LARRY MILLIEN'S APPEAL
Larry Millien has appealed from a decree sustaining a general demurrer to his Petition For Leave to File a Bill of Review. It is not necessary to address the error assigned by Larry Millien because we have concluded that the decree terminating the parental rights against him was null and void.
The petition to terminate the parental rights of appellants named both of appellants as defendants. At that time, and at all times up until the hearing on June 10, 1980, appellants lived together as husband and wife. When Larry Millien failed to file an answer to the petition to terminate parental rights, the court entered a final decree on October 19, 1978 based on a decree pro confesso entered the previous day. This case was then in this unusual posture; the parental rights of the father had been terminated but no hearing had been held on whether the parental rights of the mother should be terminated, and the mother and father were living together in the same house.
Section 93-15-7 Mississippi Code Annotated (1972) provides that the parental rights of one parent may be terminated in the following language:
After hearing all the evidence in regard to such petition, if the court or chancellor is satisfied that the parent or parents have abandoned or deserted said child, or are mentally, morally, or otherwise unfit to rear and train said child, then the court may terminate all the parental rights of said parent or parents, including the right of inheritance, and the right of the child to inherit from such parent or parents. The termination of the parental rights of one (1) parent may be made without affecting the parental rights of the other parent should circumstances and evidence ever so warrant.
In this case one petition was filed against appellants, but instead of hearing the petition against both appellants, who were then living together as husband and wife, one chancellor heard the petition against the father and another against the mother. The parental rights of Larry Millien were terminated before all of the evidence in regard to the petition was heard. This procedure was contrary to the clear provisions of the statute which prohibits termination of parental rights before "hearing all the evidence in regard to such petition." This was in derogation of the statute and makes the decree of October 19, 1978 terminating the parental rights of Larry Millien null and void. We therefore set aside the decree terminating the parental rights of Larry Millien.
REVERSED AND RENDERED.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and WALKER, BROOM, LEE, BOWLING and HAWKINS, JJ., concur.