## Ex Parte Tucker.

(Division B. Oct. 10, 1932.)

[143 So. 700. No. 30128.]

**W. D. Conn, Jr.**, Assistant Attorney-General, for the state.

22

**Gilbert & Cameron** and **J. Thomas Dunn**, all of Meridian, for appellee.

24

Argued orally by **W. D. Conn, Jr.**, for the state and by **Chas Cameron** and **Tom Dunn**, for appellee.

**Griffith, J.**, delivered the opinion of the court.

An indictment was returned into the circuit court of Lauderdale county against Bruce Tucker on the 5th day of February, 1932, charging said Tucker with burglary. On the 13th day of February, 1932, the sheriff of said county arrested said Tucker and placed him in jail, where he has since remained. On March 9, 1932, the circuit court of said county transferred the said indictment to the county court. On the 15th day of April, 1932, the county court on the recommendation of the district attorney and the county prosecuting attorney entered an order of nol. pros. in said case and that the defendant therein be forthwith discharged. The sheriff

declined to honor the order of the county court, and on the 16th day of April, 1932, the said Tucker presented to the chancellor a petition for a writ of habeas corpus, setting forth the facts aforementioned; and on the same day the chancellor declined to issue the writ on the ground that the county court was without jurisdiction in the premises and that its order of nol. pros. was void.

The principal question presented is whether that portion of section 694, Code 1930, which authorizes the transfer of indictments to the county court for trial, is constitutional and valid. The entire of that section reads as follows: "In misdemeanor cases, and in felony cases not capital, wherein indictments have been returned by the grand jury the circuit court may transfer with full jurisdiction all or any of the same, in its discretion, to the county court for trial; and the said county court shall have jurisdiction of and shall proceed to try all charges of misdemeanor which may be preferred by the district attorney or by the county prosecuting attorney on affidavit sworn to before the circuit clerk of the county; and prosecutions by affidavit are hereby authorized in misdemeanor cases under the same procedure as if indictments had been returned in the circuit court and same had been transferred to the county court."

When the county court was created in 1926, the said section authorized the transfer only of misdemeanor indictments; the purpose being to relieve the dockets of the circuit courts of the larger counties of the crowding and expense caused by the numerous indictments for misdemeanors, the smaller offenses, which could be more expeditiously and economically handled by an inferior court. This worked so well in most of the counties having the county court that the legislature in 1930 added the provision for the transfer of felony cases, not capital.

The section is attacked as being invalid on several asserted grounds. We think those which are of sufficient importance to be stated here are as follows:

1. That the portion of said section 694 complained of is unconstitutional because therein the legislature has attempted to delegate a legislative power to the judicial branch of the government;

2. That the said portion is unconstitutional because no provision is made for notice to the defendant that his case has been transferred.

In reviewing our constitutional provisions in respect to the circuit and chancery courts, in which courts all original jurisdiction is vested, other than the petty jurisdiction of the courts of justices of the peace, we are confronted with the definite conclusion that there are no provisions or means by which there can be more than one circuit court or chancery court district in any one county, which is to say, there can be no more than one circuit judge and no more than one chancellor in a given county. Nevertheless, a constitution is to be construed as if intended to stand for all time or at least for a great length of time. Moore v. General, etc., Corp., 155 Miss. 818, 823, 125 So. 411. We must credit the makers of our constitution with wisdom and foresight and we must, therefore, assume that they foresaw the day, and provided in the constitution therefor, when some one or more of the counties of the state would increase in population and in business to the extent that one circuit court and one circuit judge could not try all the business which under the jurisdiction conferred by the constitution would come into the circuit court in the particular county, and likewise as to the chancery court.

We must look then to see what provision was made to take care of this anticipated development. Upon such a search we find one provision, and one provision alone, to that end, and that is section 172 of the Constitution, which provides that "the legislature shall, from time .

to time, establish such other inferior courts as may be necessary, and abolish the same whenever deemed expedient.'' Under this section the Criminal Court Act of 1836 was held constitutional in Thomas v. State, 5 How. 20, and so was the Vice Chancery Court Act of 1842 in Houston v. Royston, 7 How. 543, and likewise the present County Court Act in State v. Speakes, 144 Miss. 125, 109 So. 129. It is well settled by those decisions that the legislature may create inferior courts which shall exercise a jurisdiction far beyond that of a petty court. In fact, it is settled that as respects its constitutional validity all that is required of a court created by legislative act under the quoted constitutional section is that when a new court is created which shall exercise a part of the jurisdiction vested by the Constitution in another court, the said new court must be inferior in ultimate authority to the constitutional court whose jurisdiction is of the same character as that given to the new court. See State v. Speakes, 144 Miss. 125, 159, 109 So. 129. It is competent, therefore, to create a court which may be permitted to exercise in full measure the same jurisdiction as the circuit court, so long as the circuit court shall be superior thereto and this attribute of superiority is accomplished by giving the circuit court the controlling authority of reversal, revisal, correction, and direction over the new court, as by certiorari, appeal, etc.

Therefore an inferior court may be created which may have jurisdiction of felonies, and we see no good reason to hold that in order that such a court having such a jurisdiction shall be put into existence and into operation, the indictments must originate in that court, rather than that they may be returned by a grand jury in the circuit court and thence transferred for trial to the inferior court. Provisions for the transfer of causes are not novel in the jurisprudence of this country, as may be seen by the numerous cases annotated in 15 C. J., pp.

1145-1147. Pursuing the thought expressed at the outset of this opinion, we can well envisage the day when the business of a county, or of each of several counties shall have grown to the extent that the said county shall constitute a judicial district, and that the circuit court in said county constituting said district shall remain open, in continuous session, throughout the year and that the entire time of the circuit judge would be occupied in the hearing of appeals, certiorari, and the like to and from inferior courts. In such a situation it can be clearly seen that it would be the better method to require all law suits to be filed in the first instance in the circuit court, and that all indictments should be by grand juries impaneled by and in said circuit court, and that by or under the direction of the said circuit court, the business, civil and criminal, should be at short intervals and from time to time transferred to the inferior courts for trial, with appeal and other supervisory powers vested in the circuit court, thus keeping the business of trials balanced and equalized among the inferior courts working under the circuit court in said county.

Looking then at the Constitution as an instrument ordained to stand for all time or for many generations, and keeping in mind that there is an incidental constitutional grant of those powers which are necessary and proper to carry into practical effect the express grants of power, we are now prepared to hold that, in the establishment of the county court, it was within the constitutional authority of the legislature to authorize the circuit courts to transfer for trial to the county courts, all or such part of the indictments originating in the circuit court as the legislature should deem expedient, leaving to the discretion of the circuit court the determination of the question whether, and how many of, these indictments so authorized to be transferred should, at any given time or on a particular occasion, be in fact transferred. It would not be competent for the legisla-

ture to enact in a mandatory manner that all or any particular classes of the indictments shall be transferred, for this would be to that extent to strip the circuit court of its constitutional original jurisdiction, Myers v. People, 67 Ill. 503; from which it follows that the one and only constitutional method of effectuating the transfer is for the legislature to provide what class or classes of indictments may be transferred, and to provide that within the limitations so prescribed the discretion so to order shall be vested in the circuit court, and that exactly is what the quoted section, 694, Code 1930, does.

There are other considerations leading to the same conclusion, but we deem the above discussion as sufficient upon the first objection as herein restated. Passing to the second, it will be observed that the order of transfer was not made until the capias had been personally served on the defendant. He was in court and was bound to take notice of all the lawful steps taken in his case thenceforward. It was lawful to make the order of transfer, and since the defendant was in court, no other notice than the entry of the order on the minutes was necessary. It may well be argued that notice is required where the order is extremely unusual or highly improbable, but as to this we express no final opinion; there being no showing here that this order in the particular court was unusual or improbable.

It is argued also that the statute only authorizes a transfer "for trial," and that an order of nol. pros. is not a trial nor any part of a trial. We hold that the words "for trial" in said section 694 are used in the broad sense of that expression and include everything that the circuit court could have done under the indictment had the case not been transferred.

Finally it is contended that there is no appeal to the circuit court from a conviction in the county court under a transferred indictment, and that for this reason the court should hold the provisions in respect to the trans-

fer of indictments to be invalid. There is more than one answer to this contention, but it is sufficient to say that these transferred cases are appealable to the circuit court exactly as are other cases adjudged in the county court.

Reversed and remanded.