606 So.2d 1125 (1992)
In the Interest of D.L.D., a Minor.
Ruben DeLEE
v.
WILKINSON COUNTY, Mississippi and the State of Mississippi on Behalf of D.L.D., a Minor.
No. 91-CA-0325.
Supreme Court of Mississippi.
August 19, 1992.
L.H. Rosenthal, Natchez, for appellant.
Michael C. Moore, Atty. Gen., Pat S. Flynn, Asst. Atty. Gen., Jackson, for appellees.
Before ROY NOBLE LEE, C.J., and PRATHER and SULLIVAN, JJ.
ROY NOBLE LEE, Chief Justice, for the Court:
This appeal is from the Chancery Court of Wilkinson County, Youth Court Division, wherein a minor child, D.L.D., was adjudicated an abused child. The Youth Court's order limited the father's visitation rights by an order, which was in direct conflict with a Chancellor's order of visitation rights as part of a divorce decree. The conflicting custody decrees in the Chancery Court and Youth Court resulted in petitions by each party for contempt being filed in those courts.
A petition for Writ of Prohibition to the Mississippi Supreme Court was denied except *1126 that the matter was remanded to the Youth Court of Wilkinson County for resolution of the conflicting orders. The Youth Court responded by entering an order reaffirming and ratifying its previous order. Mr. DeLee, father of the child, appeals to this Court. The question presented here raises the issue as to which lower court, the Youth Court or the Chancery Court, has jurisdiction to decide custody and visitation privileges of the abused child.

FACTS
Sometime in 1986, a petition for divorce was filed in the Chancery Court of Wilkinson County to terminate the marriage of Jacqueline Clark DeLee and Rueben Rufus DeLee. From the union was born a child, D.L.D. in May, 1985. After several trials in different counties, the divorce proceedings remained unresolved between the parties. On August 11, 1989, a petition was filed in the Chancery Court of Wilkinson County, Mississippi, Youth Court Division, alleging sexual abuse of the minor child. That same day, the Chancellor, Honorable Hyde Rust Jenkins II, recused himself and appointed Honorable John N. Hudson, County Court Judge of Adams County, as special chancellor to hear the petition. Apparently, Chancellor Jenkins had represented one of the parties at an earlier time.
Judge Hudson granted temporary custody of the alleged abused child to the mother, Jacqueline DeLee, pending the outcome of the abuse investigation. Mr. DeLee's visitation rights were suspended. Both parties were instructed to file appropriate pleadings in the divorce proceeding in Chancery Court for permanent custody provisions. On September 26, 1989, Judge Hudson removed D.L.D. from her mother's custody and put the child in the custody of the Wilkinson County Department of Human Services, following an investigation into the abuse allegations. On November 30, 1989, Jacqueline DeLee petitioned the court to return the child from foster care, but was denied. Also, Chancellor R.B. Reeves was appointed special chancellor to preside over the still pending divorce proceeding. On February 22, 1990, Judge Hudson sent a copy of the Youth Court file to Chancellor R.B. Reeves, for his use in camera in conjunction with the divorce proceedings. On March 12, 1990, the youth court appointed a new medical doctor and therapist to evaluate the child.
On June 15, 1990, a hearing was held in Chancery Court concerning the pending divorce action. Chancellor Reeves decided that it would be in the best interest of the child, who up until this point had been in a foster home, for her custody to be returned to the mother. The father was granted visitation two weekends a month to be held at the home of the child's paternal grandparents home. The temporary order, which was prepared by Mr. DeLee's attorneys, was never signed by the chancellor. It is important to note that the chancellor stated in this hearing that his ruling concerning the child custody was subject to the Youth Court's disposition of the abuse allegations pending in its court.
On June 25, 1990, the Honorable Ron Senko was appointed Guardian Ad Litem to represent the minor child in the Youth Court abuse allegations. On September 14, 1990, Judge Hudson adjudicated the minor child as abused within the meaning and provisions of the Youth Court Act of the Mississippi Laws of 1979, and all additions and amendments thereto. An order was issued on September 24, 1990, by Judge Hudson, awarding custody of D.L.D. to the mother, Jacqueline DeLee. The father was granted limited visitation rights, namely every other Saturday afternoon, from 1:00 until 4:30 at the residence of either Mr. Jessie Means or Reverend Bennie Still. There is no mention in the record of exactly what relation, if any, these people are to the parties. Pursuant to this order, Jacqueline DeLee and Ruben DeLee are enjoined from any and all contact with each other, each other's family, and with each other's friends. Further, the mother, father, and minor are to participate in mental health counseling to assist in the rehabilitation of a normal family life in order to assist the Court in future reviews of this case to determine what alterations should be made to move toward more normal visitation.
On December 7, 1990, a final divorce decree was issued by the Chancery Court. *1127 According to the State's brief, the issue of sexual abuse was re-litigated in Chancery Court, and considered in granting custody of the minor child. Custody was granted to the mother, with the father receiving more liberal visitation privileges than he received from the Youth Court adjudication. The father was allowed visitation every other weekend, for the entire weekend, along with alternating holiday visits. The father was also ordered to pay $400.00 per month child support. The conflicting visitation privileges granted the father by the Youth Court and the Chancery Court resulted in the parties' petitioning each court to hold the other party in contempt of that court's decree.
Mr. DeLee, through counsel, petitioned the Chancery Court to issue a temporary restraining order against the contempt proceedings being conducted in the Youth Court, as well as against enforcement of the Youth Court order. The motions for contempt have not been acted upon, pending this Court's review.
On January 18, 1991, Mike Moore, Attorney General for the State of Mississippi, by and through his designate, the Honorable Pat Flynn, was substituted as Guardian Ad Litem for the minor child. On January 29, 1991, the new Guardian Ad Litem, Pat Flynn, petitioned the Supreme Court for a Writ of Prohibition to resolve the conflicting court decrees. This Court denied the petition and remanded the case to Youth Court for resolution of the conflicting orders. The Youth Court responded by ratifying and reaffirming its previous order, with the exception of substituting the residence of John and Louise King in place of the Reverend Bennie Stills as a place for the father's visitation.

DISCUSSION

DID THE YOUTH COURT HAVE EXCLUSIVE JURISDICTION TO DETERMINE CUSTODY AND VISITATION RIGHTS OF AN ABUSED CHILD WHEN THE ORDER IS IN DIRECT CONFLICT WITH A DIVORCE DECREE?
The assumption of jurisdiction over a child by a juvenile court or, in our case, a Youth Court, frequently raises jurisdictional questions, since the statute which establishes such a court does not always clearly define the limitation which is thus imposed on the jurisdiction of another court. In this instance, Youth Court proceedings concerning possible child abuse were being conducted concurrently with the parent's divorce petition which was being heard in the Chancery Court of that same county. These two proceedings have resulted in conflicting orders with respect to custody of the minor child, D.L.D.
The Mississippi Code does not specifically address the situation with which the Court is now faced. In fact, there exist statutes which grant both the Chancery Court and the Youth Court jurisdiction over the adjudication of minors. The Mississippi Constitution grants Chancery Courts full jurisdiction in matters involving minor's business. Miss. Const. Art. 6, § 159(d) (1890). However, the Constitution also allows the legislature to establish "inferior" courts whenever deemed expedient. Miss. Const. Art. 6, § 172 (1890). The Youth Court falls under this section of the Constitution creating inferior courts.
A strict interpretation of the Constitution indicates that a Chancery Court decree would prevail over an order from an "inferior" court such as a Youth Court. After all, minor's business is expressly granted to Chancery Courts, and Youth Courts are created below Chancery Courts. Although the Chancery Court has jurisdiction over minors, the legislature has carved out an exception where abused children are concerned.
The Youth Court division was created as a division of the Chancery Court in counties which do not have county or family courts, and the chancellor presides over such Youth Court proceedings. Miss. Code Ann. § 43-21-107(3) (Supp. 1991). Furthermore, the Youth Court has exclusive original jurisdiction in all proceedings concerning an abused child, and that jurisdiction continues until the child's twentieth birthday. Miss. Code Ann. § 43-21-151(1)-(2). Even *1128 though the Youth Court is a "subsidiary" of the Chancery Court, it specializes in abuse and neglect matters, in which it was granted exclusive jurisdiction. The use of the word "full" in defining the jurisdiction of the Chancery Court seems to be inclusive, while the language in the Youth Court statute is explicitly exclusive.
There must also be considered the scope of divorce proceedings and the issues it concerns. When allegations of abuse are raised, the chancellor may continue proceedings until these allegations are investigated by the Department of Public Welfare. Miss. Code Ann. § 93-5-23 (Supp. 1991). However, the statute does not speak to what should occur if the allegations prove to be true and jurisdiction is in the Youth Court. Should not the chancellor await the Youth Court judge's order and structure the pending divorce decree to mirror that order?
In issuing a temporary custody order granting custody of D.L.D. to Mrs. DeLee, the chancellor noted that this order would be subject to the findings of the Youth Court concerning the abuse allegations. It appears from this statement that the chancellor recognized the Youth Court's exclusive jurisdiction over the matter. It is important to note that this temporary custody order was never signed by the chancellor, therefore, the original Youth Court order granting Mrs. DeLee custody and severely limiting Mr. DeLee's visitation rights was still in effect. This Youth Court order conditioned the father's visitation on attending family counseling with the mother and the minor child in an attempt to foster a healthier environment for the child.
It appears that during both proceedings, both judges were aware of the other pending proceedings. When the Youth Court petition was filed, the Youth Court judge instructed the parties to file appropriate petitions in the Chancery Court. A copy of the Youth Court file was given to the chancellor for an in camera review for use in the divorce proceeding. However, the chancellor totally ignored the findings of the Youth Court judge, as well as his order, when he awarded custody and visitation privileges which differed from that of Judge Hudson's order. Further, it is interesting to note that neither party raised the issue of res judicata with respect to the child custody being litigated in both courts.
This problem of conflicting orders came about as a result of the original judge, Chancellor Jenkins, recusing himself due to prior representation of one of the parties. The petition for divorce, filed in 1986, was later assigned to Chancellor R.B. Reeves of the Fourth Chancery District. The Youth Court proceeding to determine whether D.L.D. was in fact an abused child, was assigned to Judge John N. Hudson of the Adams County Youth Court. Ordinarily, the same chancellor (Chancellor Jenkins in this case) would preside over both the divorce proceeding as well as the Youth Court proceeding, since there is no county or family court in Wilkinson County. Chancellor Jenkins created this unusual problem now before the Court when he assigned the two proceedings to different judges. Had he not split the proceedings, conflicting orders involving child custody would not have resulted.
Although this Court has never addressed the precise issue at hand, it has addressed the constitutional issue of the Youth Court in relation to the Chancery Court. In the case of In Interest of T.L.C., 566 So.2d 691 (Miss. 1990), the Court held that the Youth Court system does not unconstitutionally usurp the power granted to the Chancery Court to adjudicate "minor's business." The Court stated that:
In a sense our Youth Courts are neither superior, equal to, or inferior to other "inferior" courts  they are special courts due to the special nature of their function.
... The social imperative for prompt disposition of matters affecting children is sufficiently within the police power ... that the legislature may streamline the appellate process as it has done in the present act.
Id. at 696-97. In the companion case to T.L.C., the Chancery Court in Cortesi v. Cortesi, 566 So.2d 702 (Miss. 1990), stayed its ruling on the child custody until the *1129 abuse allegations were ruled upon by the Youth Court. This action by the Chancery Court tends to indicate that the court recognized the Youth Court's exclusive jurisdiction over child abuse proceedings.
The case of Petition of Beggiani, 519 So.2d 1208 (Miss. 1988), addressed the "priority of jurisdiction" rule. In Beggiani, the Carroll County Youth Court acquired jurisdiction over two abused minor children, while the Hinds County Chancery Court allowed the minor children to be adopted by foster parents. The "priority of jurisdiction" rule states, "In order that the rule may be applicable, which prevents interference by another court with the jurisdiction of the court first assuming it, the second action should be between the same parties, seeking on the one hand, and opposing on the other, the same remedy, and should relate to the same question." Id. at 1210 (citing 21 C.J.S. Courts § 492, at 751 (1940)). We decided that the adoption proceedings were distinct and separate from prior custody determinations because they did not involve the same subject matter, and, therefore, the "priority of jurisdiction" rule did not apply. Id. at 1211. This Court upheld the adoption by the foster parents, but reversed the Youth Court determination that the best interest of the children would be with the grandmother.
The "priority of jurisdiction" rule should not apply to the case sub judice because, like Beggiani, neither the same subject matter nor the rights of the same parties are being adjudicated in both courts. The divorce proceedings involve only Jacqueline Clark DeLee and Ruben DeLee as parties. Although not a party to the divorce proceeding, the best interests of the minor child are considered. In contrast, the minor child is the major party in the Youth Court proceeding. Unlike the divorce proceeding in Chancery Court, the Youth Court's sole issue is the treatment and welfare of the minor child.
Other states, when faced with the same jurisdictional question involving conflicting orders, have upheld the juvenile courts' (Mississippi's Youth Court equivalent) assertion of jurisdiction. The California case of In re Anne P., 199 Cal. App.3d 183, 244 Cal. Rptr. 490 (Cal. App. 6th Dist. 1988), involved similar issues. In a divorce decree, joint custody was granted to the parents, with the child rotating households every two weeks. Upon the mother's belief that the father was sexually abusing the minor child, she petitioned the superior court for a change in custody. The judge found no evidence of sexual abuse, and awarded the father custody of the child.
Following this trial, the mother again suspected sexual abuse on the part of the father and filed a petition in juvenile court alleging sexual abuse and harm to the child's emotional state. The juvenile court judge ruled that he could not hear the sexual abuse charges because they were already adjudicated in superior court, but could hear evidence concerning the child's emotional state since this issue had not previously been litigated. The juvenile judge determined that the child's emotional well being would best be served with placement in the mother's home. In affirming the juvenile court's assumption of jurisdiction, the appeals court stated:
"It has long been established that a superior court order awarding custody of minor children in a divorce action does not, in itself, deprive the juvenile court of jurisdiction to later litigate matters and issue orders affecting the custody of those children. (In re William T., 172 Cal. App.3d 790, 797-798, 218 Cal. Rptr. 420 (1985); Marr v. Superior Court, 114 Cal. App.2d 527, 531-32, 250 P.2d 739 (1952); Dupes v. Superior Court, 176 Cal. 440, 441-42, 168 P. 888 (1917)). Moreover, when a juvenile court has adjudged an infant to be its ward then the orders of that court concerning the physical custody, control and care of its ward supersede for as long as necessary any existing orders of other courts made in custodial matters which conflict therewith. (Marr v. Superior Court, 114 Cal. App.2d at 531, 250 P.2d 739)".
In re Anne P., 199 Cal. App.3d at 193, 244 Cal. Rptr. at 496.
The California court stated that the policy behind this rule is that the state, acting *1130 through the juvenile court, under the theory of parens patriae, seeks to protect the child. The court pointed out that the juvenile court was proper in awarding custody to the mother, since the juvenile court proceeding did not involve identical issues. Id. 244 Cal. Rptr. at 497. The court added that:
"[t]he mere fact that the superior court, in an action for divorce, has made an order providing for the custody of the minor children of the litigants does not deprive the juvenile court of jurisdiction to dispose of such children in any manner it might deem best for their welfare."
Id., 199 Cal. App.3d at 193, 244 Cal. Rptr. at 496 (quoting Svoboda v. Superior Court, 190 Cal. 727, 731-32, 214 P. 440 (1923)).
The Court of Appeals of Indiana addressed the issue of conflicting jurisdiction between the superior court and juvenile court. P.B. v. T.D., 504 N.E.2d 1042 (Ind. App. 3rd Dist.), modified on other grounds, 507 N.E.2d 992 (Ind. App. 3rd Dist. 1987). Custody of two minor children was granted to the father, P.B., pursuant to a divorce decree by the Superior Court. Upon learning that the father was fondling his eight year old daughter, a petition was filed in the juvenile court; the court adjudicated the child as one in need of services and placed the minor child in the home of her stepmother. In upholding the juvenile court's decision, the appeals court relied on a statute which is strikingly similar to § 43-21-151 of the Mississippi Code, stating that:
"[O]nce adjudicated a child in need of services in a juvenile proceeding the juvenile court had jurisdiction to enter a dispositional decree awarding wardship to any person or shelter care facility ... Ind. Code Ann. § 31-6-4-15.4(4) (Burns Supp. 1986).... A juvenile court has exclusive jurisdiction... in ... proceedings in which a child, including a child of divorced parents, is alleged to be a child in need of services. Ind. Code Ann. § 31-6-2-1(a). The juvenile court retains that exclusive jurisdiction until the child in need of services reaches his twenty-first birthday unless the court discharges the child and his parent, guardian, or custodian at an earlier time. Therefore, no other Indiana court has jurisdiction to entertain any proceeding which in any way conflicts with the exclusive jurisdiction vested in the juvenile court by; the commencement of a `child in need' proceeding."
Id. at 1043 (quoting Guardianship of Bramblett v. Grant County Dept. of Public Welfare, 495 N.E.2d 798, 798-99 (Ind. App. 1986)) (emphasis added). Therefore, the appeals court held that the juvenile court had exclusive authority to render its decision concerning the child's custody, in contrast to an earlier superior court decree. See also, Houser v. Houser, 166 Kan. 45, 199 P.2d 497 (1948); Trent v. Bellamy, 164 Kan. 438, 190 P.2d 400 (1948).
The order of the Youth Court of Wilkinson County is affirmed.
YOUTH COURT ORDER AFFIRMED.
HAWKINS, P.J., and PRATHER, ROBERTSON, SULLIVAN, PITTMAN and BANKS, JJ., concur.
McRAE, J., dissents with separate written opinion joined by DAN M. LEE, P.J.
McRAE, Justice, dissenting:
Being of the opinion that the final determination of D.L.D.'s custody and visitation schedule was a matter properly within the discretion of the chancery court, I dissent from the majority's opinion.
Miss. Const. art. 6, § 159 vests the chancery courts with full jurisdiction over all matters involving divorce, alimony and minor's business. I recognize that pursuant to Miss. Const. art. 6, § 172, the legislature is empowered to create inferior courts whenever it deems it to be necessary. It is under the aegis of § 172 that the legislature established the Youth Court as an arm of the chancery court and vested it with the exclusive original jurisdiction over abuse cases involving children under the age of twenty. However, I fail to see how we can distinguish the relationship between the chancery court and the Youth Court from that existing between the circuit court and the county courts. As we explained in Ex *1131 parte Tucker, 164 Miss. 20, 143 So. 700 (1932),
it is settled that as respects its constitutional validity all that is required of a court created by legislative act under the quoted constitutional section [§ 172] is that when a new court is created which shall exercise a part of the jurisdiction vested by the Constitution in another court, the said new court must be inferior in ultimate authority to the constitutional court whose jurisdiction is of the same character as that given to the new court. (emphasis added).
164 Miss. at 29, 143 So. 700.
The Constitution vests the chancery courts with full jurisdiction over "minor's business." Clearly that is of the same character of the jurisdiction given the Youth Court, a creature of statute. Under Tucker, it is apparent that the ultimate authority in determining matters concerning the best interest and welfare of minor children belongs in the constitutionally created chancery court.
The case sub judice illustrates vividly the folly of removing the ultimate authority to adjudicate minor's business from the court constitutionally vested with that power. The Youth Court adjudicated a child to be abused at the same time that her parents divorce proceedings were underway in chancery court. Although each judge was aware of the proceedings in the other's court, the Youth Court's order limiting the father's visitation rights was in conflict with the visitation rights decreed by the chancellor as part of the divorce decree. The problems faced do not begin and end with the issue raised on this appeal. Rather, there are further questions of which court will retain jurisdiction over the child and to which court either parent would turn for a modification of custody or visitation privileges. Once the chancery court relinquishes the custody of the child to the Youth Court, can the chancellor modify the Youth Court order at a later date, particularly when the records are sealed? Or, will the custody forever remain with the Youth Court for modification?
In amending Miss. Code Ann. § 93-5-23 (Supp. 1991), the legislature provided for those circumstances where allegations of physical or sexual abuse arise against a parent during the course of child custody proceedings. It is elementary that in all matters concerning minors, especially child custody and support, the polestar concern of the chancery court is provide for the best interests of minor children. Beyond empowering the chancery court to grant a continuance in the custody proceedings pending investigation of any charges raised, the statute is bereft of any language specifying procedures to be followed by the chancellor when charges of abuse are well-founded. Thus, protection of the child's best interests is impeded.
The Youth Court plays a vital role in the expeditious adjudication of child abuse cases. However, in those cases where the chancery court has jurisdiction because of pending divorce and custody proceedings, the final determination of custody and visitation rights belongs with the chancellor. In those situations where it is appropriate for the Youth Court to determine whether the child has been abused or is at risk, full and open communication between the courts is essential to insuring the child's best interests. Under the Uniform Child Custody Jurisdiction Act, codified at Miss. Code Ann. § 93-23-1, et seq. (Supp. 1991), courts are directed to recognize and enforce custody decrees from other states. Section 93-23-25. The statute provides in detail for the interstate exchange of information relevant to custody proceedings, including the sharing of certified copies of hearing transcripts and other records. Miss. Code Ann. §§ 93-23-37 through -43. How does one do this given the fact that Youth Court records are confidential? The same assistance provided to courts on an interstate basis should be mandated on an intrastate basis so as to facilitate communication between courts and avoid conflicting custody orders such as those now before us.
Accordingly, because the chancery court is the superior court with constitutional authority to handle matters concerning minor's *1132 business, I dissent from the majority's findings.
DAN M. LEE, P.J., joins this opinion.