# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2017-CA-00541-SCT

*IN THE MATTER OF THE PETITION OF M.A.S*
*FOR ADOPTION OF THE MINOR CHILD*
*DESCRIBED HEREIN: M.A.S.*

*v.*

*MISSISSIPPI DEPARTMENT OF HUMAN*
*SERVICES a/k/a DEPARTMENT OF CHILD*
*PROTECTION SERVICES, A.B.G.P. AND C.P.*

| | |
|---|---|
| DATE OF JUDGMENT: | 04/17/2017 |
| TRIAL JUDGE: | HON. JAMES B. PERSONS |
| TRIAL COURT ATTORNEYS: | DIANNE HERMAN ELLIS |
| | KIMBERLY MICHELLE HENRY |
| | DALANEY LEE MECHAM |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | DIANNE HERMAN ELLIS |
| ATTORNEYS FOR APPELLEES: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: KIMBERLY MICHELLE HENRY |
| | DALANEY LEE MECHAM |
| NATURE OF THE CASE: | CIVIL - ADOPTION |
| DISPOSITION: | AFFIRMED - 06/07/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WALLER, C.J., COLEMAN AND MAXWELL, JJ.**

**MAXWELL, JUSTICE, FOR THE COURT:**

¶1.     Prior to April 2016, a chancellor could, as part of a contested adoption, terminate the

parents' rights, even when the termination issue was pending in youth court as part of a

child-abuse proceeding.[1] But in April 2016, the adoption and termination-of-parental-rights statutes changed. Now, a chancellor cannot grant an adoption contested by the parents unless the parents' rights have been terminated under the Mississippi Termination of Parental Rights Law (MTPRL).[2] And under the MTPRL, the Legislature has carved out an important exception to the chancery court's jurisdiction over termination proceedings, giving "a county court, when sitting as a youth court with jurisdiction of a child in an abuse or neglect proceeding, original exclusive jurisdiction to hear a petition for termination of parental rights against a parent of that child."[3]

¶2.    In this contested adoption filed in January 2017, the chancellor applied the MTPRL and recognized the youth court had exclusive jurisdiction over the request to terminate parental rights because the youth court already had jurisdiction over the child as part of an abuse proceeding. And unless and until the youth court terminated the parents' rights, the chancery court could not grant the petition to adopt the child. For this reason, the chancellor dismissed the adoption so the termination could be pursued in youth court.

¶3.    Because the chancellor correctly interpreted and applied the controlling law when he dismissed the adoption petition, we affirm.

**Background Facts and Procedural History**

---

[1] *Miss. Dep't of Human Servs. v. Watts*, 116 So. 3d 1056, 1059 (Miss. 2012).

[2] Miss. Code Ann. § 93-17-7(1) (Supp. 2017), *amended by* 2016 Miss. Laws ch. 431 (H.B. 1240) § 21 (effective April 18, 2016).

[3] Miss. Code Ann. § 93-15-105(1) (Supp. 2017), *added by* 2016 Miss. Laws ch. 431 (H.B. 1240), § 4 (effective April 18, 2016).

¶4.     When he was a months-old infant, D.C.G.P. was taken to the emergency room by his parents, A.B.G.P. and C.P.[4]  Because the doctors suspected physical abuse, the Mississippi Department of Human Services (MDHS)[5] removed the child from his parents and placed him in the foster care of M.A.S.

¶5.     MDHS then filed a petition with the Harrison County Youth Court.  After an initial adjudication hearing, the youth court ordered the child to remain under MDHS's protection. M.A.S. continued to foster the child for two years.  Then, on November 8, 2016, the youth court held another adjudication hearing.  The youth court determined reunification with his parents was in the best interest of the child.  The youth court adopted a permanency plan to achieve reunification and ordered MDHS to make reasonable efforts to achieve the plan.

¶6.     Despite the youth court's order to reunite the child with his parents, M.A.S. filed an adoption petition in Harrison County Chancery Court on January 30, 2017.  She named MDHS and the child's parents, A.B.G.P. and C.P., as respondents.  As part of her petition, she sought to terminate A.B.G.P. and C.P.'s parental rights.

¶7.     On March 24, 2017, A.B.G.P. and C.P. moved to dismiss M.A.S.'s petition.  They alerted the chancery court to the youth court's reunification order, asserting the youth court has original exclusive jurisdiction over whether to terminate their parental rights.  And they

---

[4] This case is confidential.  So only the parties' initials will be used.

[5] During the pendency of the youth-court action, the MDHS division that handles abused and neglected children became a separate agency, Mississippi Child Protection Services.  But for consistency and because M.A.S. named MDHS as respondent in her petition, we refer to the state agency involved in this case as MDHS.

accused M.A.S. of trying to circumvent the youth court's reunification decision by seeking a termination in chancery court.

¶8.     On April 17, 2017, the chancellor granted A.B.G.P. and C.P.'s motion to dismiss. Based on the 2016 amendments to the termination-of-parental-rights law, the chancellor agreed with the parents that the youth court had exclusive jurisdiction over M.A.S.'s petition to terminate parental rights. And under the 2016 amendment to the adoption statute, unless and until parental rights were terminated, the chancellor could not grant a contested adoption. Thus, the chancellor dismissed M.A.S.'s petition "in order that the termination of the parental rights of the minor child's biological parents may be pursued in Harrison County Youth Court."

¶9.     M.A.S. timely appealed, triggering this Court's de novo review. *Schmidt v. Catholic Diocese of Biloxi*, 18 So. 3d 814, 821 (Miss. 2009) (reviewing de novo the grant of a motion to dismiss for lack of subject-matter jurisdiction).

## Discussion

### I.     Governing Statutes

¶10.    Central to this appeal is the chancellor's interpretation and application of the 2016 bill overhauling termination-of-parental-rights proceedings. 2016 Miss. Laws ch. 431 (H.B. 1240) (effective April 18, 2016). Though often connected to adoptions, terminations of parental rights are distinct proceedings, governed by separate chapters of the Mississippi Code. Mississippi Code Section 93-15-101 *et seq.*—now titled the Mississippi Termination

4

of Parental Rights Law (MTPRL)—governs terminations of parental rights. And Mississippi Code Section 93-17-1 *et seq.* governs adoptions.

### A. Prior Statutes and Interpretation

¶11. Before April 2016, however, that distinction was less clear. While the termination statute, Section 93-15-103,[6] provided specific factors justifying termination, the adoption statute, Section 93-17-7, also had its own "expansive list of factors that may be considered as reasons to terminate parental rights in the course of a contested adoption." *Miss. Dep't of Human Servs. v. Watts*, 116 So. 3d 1056, 1059 (Miss. 2012) (citing Miss. Code Ann. § 93-17-7 (Rev. 2004)).

¶12. This statutory authority within Section 93-17-7 to terminate parental rights was key to this Court's holding in a prior case factually similar to this one. In *Watts*, the youth court had jurisdiction over two abused and neglected children and was working toward reunification with the boys' father, who had just been released from prison. When the foster parents filed in chancery court a petition to terminate parental rights and adopt the children, MDHS challenged the chancery court's jurisdiction, asserting the youth court's continuing jurisdiction over the children. *Watts*, 116 So. 3d at 1057-58.

¶13. The chancery court held it had jurisdiction, and this Court agreed. We acknowledged the Legislature had given youth courts "'exclusive original jurisdiction' over 'all proceedings' involving abused and neglected children." *Id.* at 1058 (quoting Miss. Code

---

[6] Mississippi Code Section 93-15-103 (Rev. 2015) was repealed and replaced by Section 2 of House Bill 1240. Now, the MTPRL's grounds-for-termination factors are found in Mississippi Code Section 93-15-121 (Supp. 2017).

5

Ann. § 43-21-151). We also acknowledged our prior holding in **K.M.K. v. S.L.M** that the youth court has priority jurisdiction if "there had been a prior proceeding in the youth court concerning the same child," meaning the "chancery court may not exercise jurisdiction over any abused and neglected child or any proceeding pertaining thereto over which the youth court may exercise jurisdiction." **Watts**, 116 So. 3d at 1059 (quoting **K.M.K. v. S.L.M**, 775 So. 2d 115, 118 (Miss. 2000)). But one of the proceedings a youth court may not exercise jurisdiction over is an adoption. Instead, "[j]urisdiction to hear and determine adoption proceedings is vested exclusively in our chancery courts." **Id.** (citing Miss. Code Ann. § 93-17-3(4) (Rev. 2004)). And when exercising jurisdiction over an adoption petition, chancery courts were statutorily authorized to consider "an expansive list of factors . . . as reasons to terminate parental rights in the course of a contested adoption." **Id.** (citing Miss. Code Ann. § 93-17-7 (Rev. 2004)).

¶14. Based on this statutory authority, we found "nothing that would require a chancery court to hold in abeyance its exclusive jurisdiction over an adoption petition until a youth court first terminates the rights of the natural parents." **Id.** Instead, "the Chancery Court may exercise its exclusive jurisdiction over these adoption proceedings even though the Youth Court has not yet terminated the rights of the parents." **Id.**

¶15. Chief Justice Waller dissented. While, "[c]ertainly, chancery courts have exclusive jurisdiction to hear and determinate adoption proceedings," a contested adoption cannot be granted over a parent's objection without first terminating the parent's rights. **Id.** at 1061 (Waller, C.J., dissenting). And in his view, because "the Youth Court . . . already has

6

exercised jurisdiction over termination-of-parental-rights proceedings, it retains continuing jurisdiction over that issue, and the . . . Chancery Court should not be allowed to reach that same issue by adjudicating an adoption over [the father's] objection." *Id.* Instead, Chief Justice Waller would have applied *K.M.K.*'s priority-jurisdiction holding to the particular facts of the case. According to him—

> Legislative intent was one of our principal concerns in that case. One of the primary goals of youth court is reunification, if that is found to be in the child's best interest. That goal is thwarted, however, if chancery courts are allowed to exercise jurisdiction over contested adoptions even as reunification is underway. In *K.M.K.*, we also sought to prevent forum shopping and to avoid conflicting orders between trial courts on the same issues and multiple suits.

*Watts*, 116 So. 3d at 1063 (Waller, C.J., dissenting) (citing *K.M.K.*, 775 So. 2d at 118).

### B. New and Amended Statutes

¶16. Three and a half years after *Watts*, during the 2016 session, the Legislature passed House Bill 1240, aimed at reforming parental-rights terminations. Significantly, the Legislature removed the separate list of termination factors from Section 93-17-7. 2016 Miss. Laws ch. 431 (H.B. 1240), § 21. In doing so, the Legislature removed the chancery court's authority to grant a contested adoption and terminate parental rights without having to follow the termination-of-parental-rights statutes. Instead, Section 93-17-7 now provides: "No infant shall be adopted to any person if a parent whose parental rights have not been terminated under the Mississippi Termination of Parental Rights Law, after having been summoned, shall appear and object thereto before the making of a decree for adoption." Miss. Code Ann. § 93-17-7(1) (Supp. 2017). In other words, there are no longer two

7

statutory avenues to terminate parental rights—one under the MTPRL and another as part of a contested adoption. Now, all terminations of parental rights must proceed under the MTPRL.

¶17. There is also no longer competing jurisdiction between youth court and chancery court over parental-rights terminations involving abused or neglected children. House Bill 1240 added a new Section 93-15-105, which covers jurisdiction and venue of termination-of-parental-rights proceedings. Miss. Code Ann. § 93-15-105(1) (Supp. 2017). Under Section 93-15-105(1), "[t]he chancery court has original exclusive jurisdiction over all termination of parental rights proceedings" with one important exception. In direct contradiction to *Watts*, Section 95-15-105(1) unequivocally provides that a "county court, when sitting as a youth court with jurisdiction of a child in an abuse or neglect proceeding, *has original exclusive jurisdiction* to hear a petition for termination of parental rights against a parent of that child." Miss. Code Ann. § 93-15-105(1) (Supp. 2017) (emphasis added).

¶18. This means that when a petition for adoption is filed in chancery court—as it must be[7]—and the parents of that child contest the adoption, amended Section 93-17-7(1) now requires that the parents' rights be terminated *under the MTPRL* before the contested adoption can be granted. The MTPRL provides that the chancery court also has jurisdiction over the termination proceeding *unless* the youth court already has jurisdiction over the child in an abuse or neglect proceeding. Miss. Code Ann. § 93-15-105(1) (Supp. 2017). If the youth court already has jurisdiction over the child in an abuse and neglect proceeding, then

---

[7] Miss. Code Ann. § 93-17-3(4) (Supp. 2017).

8

the youth court has exclusive original jurisdiction to hear a petition to terminate parental rights. So a person seeking to adopt the abused or neglected child no longer can simply seek the termination of the parents' rights as part of her adoption petition. Instead, the MTPRL makes clear she must first petition for the termination of parental rights in youth court, before she can seek an adoption in chancery court.

¶19. Thus, House Bill 1240 eliminated Chief Justice Waller's concern in *Watts*—that a foster parent could potentially thwart a youth court's reunification decision by seeking termination as part of a contested adoption in chancery court. *See Watts*, 116 So. 3d at 1063 (Waller, C.J., dissenting).

## II. Application

¶20. Turning to this case, the chancellor did not—as M.A.S. urged him to—simply follow *Watts* and exercise jurisdiction over the termination-of-parental-rights request as part of the contested adoption. Instead, applying amended Section 93-17-7, the chancellor recognized the child could not be adopted because A.B.G.P. and C.P., whose parental rights had not yet been terminated under the MTPRL, had objected. And under newly created Section 93-15-105(1) of the MTPRL, the youth court had exclusive original jurisdiction to hear M.A.S.'s termination-of-parental-rights petition, because the youth court already had jurisdiction over the child as part of the abuse proceeding initiated by MDHS years prior. So the chancellor dismissed the adoption petition in order for termination to be pursued in youth court.

¶21. On appeal, M.A.S. makes the same *Watts*-based argument she made in chancery court—"that the Chancery Court may exercise its exclusive jurisdiction over these adoption

proceedings even though the Youth Court has not yet terminated the rights of the parents." *Watts*, 116 So. 3d at 1059.  This argument, however, wholly ignores House Bill 1240 and the fact that, through amended Section 93-17-7(1) and newly created Section 93-15-105(1), the Legislature has codified the opposite of *Watts*—the chancery court may not grant a contested adoption if a youth court with jurisdiction over the child in an abuse proceeding has not yet terminated the parents' rights.

¶22.    Because the law has changed since *Watts*, the chancellor did not err by applying the current governing statutes to hold that the youth court had exclusive jurisdiction over the termination of A.B.G.P. and C.P.'s parental rights and, unless and until those rights were terminated, the child could not be adopted.

### III.    Constitutionality

¶23.    Alternatively, M.A.S. asserts, if the chancellor correctly interpreted and applied Section 93-15-105(1), then the new jurisdiction statute is unconstitutional.  M.A.S. did not bring this constitutional argument before the chancellor.  And "this Court has stated repeatedly that constitutional questions not raised in the trial court will not be reviewed on appeal." *Pascagoula Sch. Dist. v. Tucker*, 91 So. 3d 598, 603 (Miss. 2012).  That said, "a question of subject matter jurisdiction may be presented at any time"—including during appeal. *Burnette v. Hartford Underwriters Ins. Co.*, 770 So. 2d 948, 951 (Miss. 2000). M.A.S.'s constitutional challenge raises a question of subject-matter jurisdiction.  So we proceed to address its merits.

¶24. Statutes such as Section 93-15-105(1) "come before us clothed with a heavy presumption of constitutional validity." *In the Interest of T.L.C.*, 566 So. 2d 691, 696 (Miss. 1990), *overruled on other grounds by In re J.T.*, 188 So. 3d 1192 (Miss. 2016). And "[t]he party challenging the constitutionality of a statute"—in this case M.A.S.—"is burdened with carrying [her] case beyond all reasonable doubt before this Court has authority to hold the statute, in whole or in part, of no force or effect." *Id.* (citations omitted).

¶25. M.A.S. has not met this burden. Quoting *Watts*, M.A.S. asserts Section 159(d) of "[t]he Mississippi Constitution gives chancery courts 'full jurisdiction over minor's business,'" which "cannot be diminished by statute." *Watts*, 116 So. 3d at 1058 (quoting Miss. Const. art. 6, § 159(d)). But in *Watts*, the chancery-court jurisdiction that could not be "diminished by statute" was the chancery court's exclusive jurisdiction "to hear and determine *adoption proceedings*." *Id.* (emphasis added). Section 93-15-105(1) does not diminish that. Section 93-15-105(1) does not address adoptions. It applies to termination proceedings only.

¶26. Importantly, the chancellor here did not dismiss M.A.S.'s petition based on lack of jurisdiction over the child's *adoption*. Rather, he dismissed the petition because he lacked jurisdiction over the petition to terminate the parents' rights based on the youth court's jurisdiction over the child. And unless and until those rights were terminated, the child could not be adopted. In other words, he dismissed the petition, not because the chancery court was deprived of its constitutionally set jurisdiction over adoptions, but rather because M.A.S. sought to adopt a child who was not currently eligible for adoption. So M.A.S.'s argument

11

that Section 93-15-105(1) unconstitutionally deprives the chancery court of its jurisdiction over adoptions fails.

¶27. The dissent disagrees with our analysis, concluding that, because an action by a county court sitting as a youth court may be required before an abused and neglected child may be adopted, Section 93-15-105(1) unconstitutionally encroaches on the chancery court's jurisdiction over adoptions. But, through Section 43-21-151, the Legislature gave youth courts "'exclusive original jurisdiction' over 'all proceedings' involving abused and neglected children."[8] *Watts*, 116 So. 3d at 1058 (quoting Miss. Code Ann. § 43-21-151). Section 93-15-105(1) is simply an extension of Section 43-21-151, clarifying that, once an abused-and-neglected-child proceeding is initiated in youth court, that court's exclusive jurisdiction carries through the entirety of the proceeding.[9]

¶28. By declaring Section 93-15-105(1) unconstitutional, what the dissent is really saying is that Section 43-21-15—and every single county court exercising youth court jurisdiction—is unconstitutional. Taking the dissent's view to its logical conclusion, does not a proceeding over an abused and neglected child also involve "minor's business"? Of course it does. And when faced with a similar Section 159(d)-based argument against

_____

[8] Section 43-21-151 has several significant exceptions, not applicable here.

[9] In a sense, Section 93-15-105(1) codifies our priority-jurisdiction holding in *K.M.K.*—"that a chancery court may not exercise jurisdiction over any abused or neglected child or any proceeding pertaining thereto over which the youth court may exercise jurisdiction *if* there has been a prior proceeding in the youth court concerning that same child." *K.M.K.*, 775 So. 2d at 118. While *Watts* made clear a youth court may not exercise jurisdiction over an adoption proceeding, both *Watts* and *K.M.K.* recognized the youth court's jurisdiction over parental-rights terminations involving an abused or neglected child. *Watts*, 116 So. 3d at 1058-59; *K.M.K.*, 775 So. 2d at 117.

12

Section 43-21-151, "this [C]ourt has held constitutional the youth court and its jurisdiction." *In re T.A.P.*, 742 So. 2d 1095, 1102-03 (Miss. 1999) (citing *In the Interest of D.K.L.*, 652 So. 2d 184, 189 (Miss. 1995); *In the Interest of D.L.D.*, 606 So. 2d 1125, 1127 (Miss. 1992); *T.L.C.*, 566 So. 2d at 696-97). In particular, the father in *T.L.C.* made a constitutional argument against Section 43-21-151 very similar to M.A.S.'s complaint against Section 93-15-105(1)—that it "unconstitutionally usurps jurisdiction he believes committed exclusively to Chancery Court." *T.L.C.*, 566 So. 2d at 695. Like the dissent here, the father in that case "h[ung] his hat on Section 159(d) which vests in the chancery court 'full jurisdiction' in cases concerning 'minor's business' and call[ed] [the Court's] attention to *Wheeler v. Shoemake*, 213 Miss. 374, 57 So. 2d 267 (1952)." *T.L.C.* , 566 So. 2d at 696. But, in this Court's view, "nothing in *Wheeler* suggests any constitutional infirmity in the jurisdiction of those youth courts in counties having county courts where the youth courts are made divisions thereof." *Id.*

¶29. We find the same to be true here. Nothing suggests any constitutional infirmity in the youth court's jurisdiction over terminations of parental rights as part of an ongoing abused-and-neglected-child proceeding. Contrary to the dissent's contention, Section 93-15-105(1) does not deprive the chancery court of its exclusive jurisdiction over adoptions. And Section 93-15-105(1) is consistent with Section 43-21-151's exclusive-jurisdiction provision, which this Court has upheld as constitutional. Therefore, we hold M.A.S. has failed to overcome the heavy presumption that Section 93-15-105(1)'s exclusive-jurisdiction provision is constitutional.

**Conclusion**

¶30.    The chancellor properly interpreted and applied Section 93-15-105(1) and Section 93-17-7(1).  Therefore, we affirm the order dismissing M.A.S.'s prematurely filed adoption petition.

¶31.    **AFFIRMED.**

**WALLER, C.J., RANDOLPH, P.J., COLEMAN, BEAM, CHAMBERLIN AND ISHEE, JJ., CONCUR.  KITCHENS, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KING, J.**

**KITCHENS, PRESIDING JUSTICE, DISSENTING:**

¶32.    Because Mississippi Code Section 93-15-105(1) unconstitutionally diminishes the jurisdiction of the chancery court to hear and determine petitions for adoption, I respectfully dissent. It is elementary that a contested adoption cannot take place unless parental rights have been terminated. Section 93-15-105(1) purports to prevent chancery courts from terminating parental rights with respect to any child under the jurisdiction of a youth court in an abuse or neglect proceeding. Miss. Code Ann. § 93-15-105(1) (Supp. 2017). But if a chancery court cannot terminate the parental rights of parents who contest an adoption, then it is stymied in the exercise of its constitutional prerogative to adjudicate a petition for adoption. Therefore, I would hold that Section 93-15-105(1) is unconstitutional and void.

¶33.    Section 93-15-105(1) is part of a 2016 legislative enactment that revised our state's law governing termination of parental rights, now known as the Mississippi Termination of Parental Rights Law, 2016 Miss. Laws Ch. 431 (effective April 18, 2016). Section 93-15-105(1) provides: "The chancery court has original exclusive jurisdiction over all termination

of parental rights proceedings except that a county court, when sitting as a youth court with jurisdiction of a child in an abuse or neglect proceeding, has original exclusive jurisdiction to hear a petition for termination of parental rights against a parent of that child." Miss. Code Ann. § 93-15-105(1) (Supp. 2017). M.A.S. argues that this statute is unconstitutional because it is in conflict with the Mississippi Constitution of 1890, which vests in the chancery court the authority to adjudicate adoptions. *See* Miss. Const. Art. 6 § 159(d).

¶34. I agree with the majority that, because M.A.S.'s constitutional challenge raises a question of subject-matter jurisdiction, the issue is not procedurally barred despite her failure to bring it to the attention of the chancery court. But unlike the majority, I would hold that Section 93-15-105(1) is unconstitutional beyond a reasonable doubt. Although state statutes come to us clothed with a heavy presumption of constitutional validity, legislation that is in palpable conflict with the constitution is nevertheless void. ***In the Interest of T.L.C.***, 566 So. 2d 691, 696 (Miss. 1990), *overruled on other grounds*. The presumption of constitutionality may be overcome if the statute is shown to be unconstitutional beyond a reasonable doubt. *Id.*

¶35. Because a contested adoption cannot take place without terminating parental rights, and our Constitution vests jurisdiction of minors' business, including adoptions, in the chancery courts, Section 93-15-105(1) is in palpable conflict with our Constitution and it is facially unconstitutional beyond a reasonable doubt. Without the ability to terminate parental rights, a chancery court cannot exercise its constitutional authority to adjudicate a contested adoption petition. This Court held as much in ***Mississippi Department of Human Services***

15

*v. Watts*, 116 So. 3d 1056, 1060-61 (Miss. 2012). In *Watts*, the youth court had acquired jurisdiction of two minor children taken into custody by the Jackson County Department of Human Services after allegations of neglect. *Id.* at 1057. The youth court proceedings culminated in an order for reunification with the children's natural father. *Id.* The children's foster parents filed a petition in chancery court for termination of parental rights and adoption, and the Department argued that the chancery court had no jurisdiction to adjudicate the adoption petition due to the youth court's reunification order. *Id.*

¶36.    This Court held that the chancery court had jurisdiction over the adoption proceedings. *Id.* We recognized that "The Mississippi Constitution gives chancery courts 'full jurisdiction' [over] . . . minor's business," and that this constitutional jurisdiction "cannot be diminished by statute."[10] *Id.* at 1058 (quoting Miss. Const. Art 6 § 159; *White v. White*, 26 So. 3d 342, 346 (Miss. 2010)). We found that, in rendering a judgment of adoption, the chancellor has authority to terminate parental rights. *Id.* at 1059.

¶37.    After examining the statute that undertakes to set out the youth court's exclusive jurisdiction over abused and neglected children,[11] and the statute that grants the chancery

---

[10] Because chancery courts were established by the Mississippi Constitution, they are constitutional courts, and their jurisdiction cannot be diminished. Miss. Const. Art. 6, § 159. Youth courts are inferior courts created by statute pursuant to Article 6, Section 172 of the Mississippi Constitution, which allows the legislature to create "such other inferior courts as may be necessary, and abolish the same whenever deemed expedient." Miss. Const. Art. 6, § 172. They have been deemed "special courts." *In the Interest of T.L.C.*, 566 So. 2d at 696.

[11] Miss. Code Ann. § 43-21-151 (Rev. 2015).

court exclusive jurisdiction over adoptions,[12] and related statutes, many of which now have been repealed or amended, we discussed the case of ***In re Beggiani***, 519 So. 2d 1208 (Miss. 1988). ***Id.*** at 1058-59. There, the Court was confronted with another jurisdictional contest between youth court and chancery court. ***Beggiani***, 519 So. 2d at 1209. In ***Beggiani***, foster parents had petitioned for adoption of a child under the jurisdiction of the youth court in abuse or neglect proceedings. ***Id.*** After the youth court had granted custody to the child's maternal grandmother, the chancery court granted the foster parents' petition for adoption. ***Id.*** The grandmother argued that the youth court had priority jurisdiction of the entire controversy, barring the adoption proceedings. ***Beggiani*** held that the priority jurisdiction rule did not apply because abuse or neglect proceedings involve a different subject matter from adoption proceedings, finding:

> [I]t has been recognized that adoption proceedings are entirely separate and distinct statutory proceedings neither connected with nor controlled by the prior custody awards of another court. ***Lewison v. State***, 193 So. 2d 53 (Fla. Dist. Ct. App. 1966). Even though a juvenile court may have obtained and retained jurisdiction over a custody case by an initial adjudication of dependency and a custody award, jurisdiction of another court in a subsequent adoption proceeding is unaffected, and the juvenile court could not act so as to thwart the adoption proceedings.

***Id.*** at 1211 (citation omitted). This Court held that the chancery court had assumed jurisdiction of the adoption proceedings properly despite the youth court's exercise of jurisdiction over the child in the abuse and neglect proceedings and despite the youth court's entry of a custody award. ***Id.*** at 1211. Thus, ***Beggiani*** recognized that abuse or neglect of a

---

[12] Miss. Code Ann. § 93-17-3(4) (Rev. 2013).

17

child is an entirely different subject matter from adoption of a child, and that "an adoption is superior to a custody award." *Id.* at 1213-14.

¶38.	After analyzing *Beggiani*, *Watts* set forth the constitutional underpinning of its holding that chancery courts may exercise their jurisdiction over adoptions even if a youth court has assumed jurisdiction over the child in an abuse or neglect proceeding. *Watts*, 116 So. 3d at 1060-61. *Watts* held that "[t]he statutes which bestow jurisdictional powers on the Youth Court do not diminish the Chancery Court's jurisdictional authority granted by our Constitution. Therefore, even though the Youth Court properly exercised jurisdiction over proceedings related to these abused and neglected minors, its jurisdiction did not extend to the Wattses' petition for adoption, and the Youth Court may not exercise its jurisdiction in a manner 'so as to thwart the adoption proceedings.'" *Id.* (citing *Beggiani*, 519 So. 2d at 1211).

¶39.	The majority finds that *Watts* has no lasting validity after the legislature's enactment of Section 93-15-105(1). But, although *Watts* relied on statutes and case law, our decision in that case rested also on constitutional grounds. *See Watts*, 116 So. 3d at 1060 ("we are more persuaded that the dictates of our Constitution, our own caselaw, and the best interests of these two children" mandated that the chancery court assume jurisdiction over the contested adoption proceedings despite the youth court's assertion of jurisdiction over the children in abuse and neglect proceedings). *Watts* recognized that the chancery court's constitutional jurisdiction over minors' business, which includes adoptions, cannot be

18

diminished by the statutes establishing youth court jurisdiction.[13] *Id.* at 1060-61. Because

*Watts*'s delineation of chancery court jurisdiction rested upon constitutional grounds, the

legislature cannot circumvent this Court's decisions by enacting contrary legislation with the

effect of diminishing the constitutionally established chancery court's jurisdiction.

¶40.    It is beyond question that Section 93-15-105(1) does diminish the chancery court's

jurisdiction. The majority finds that, because Section 93-15-105(1) removes only the

chancery court's jurisdiction to terminate parental rights, its jurisdiction to adjudicate

adoption petitions remains undisturbed. But because no contested adoption can take place

unless the rights of the natural parents have been terminated, the majority's conclusion is

specious. Of course Section 93-15-105(1) purports to reduce the chancery court's

jurisdiction, as this very case illustrates. Applying the new statute, the chancellor found that,

because the youth court had jurisdiction over D.C.G.P. in an abuse or neglect proceeding, the

chancery court lacked jurisdiction to grant a contested adoption since the chancellor could

not terminate parental rights. So the chancery court exercised the only option left to it by the

new statute and dismissed the adoption petition.

¶41.    After today's decision, in those counties in which the county court sits as a youth

court, children under the youth court's jurisdiction in abuse or neglect proceedings are

---

[13] As the majority recognizes, this Court has carved out an exception to chancery court jurisdiction over minors' business by finding that the statute giving youth courts exclusive original jurisdiction over abused and neglected children is constitutional. *In the Interest of T.L.C.*, 566 So. 2d at 696. But until today's decision, the chancery court's jurisdiction over adoptions was inviolate. After this decision, any child under the jurisdiction of a county court sitting as a youth court in abuse or neglect proceedings cannot be adopted over his or her natural parents' objection unless and until the youth court decides to terminate parental rights.

uniquely situated because those children will not be eligible for adoption in a contested case absent the action of the youth court. The Mississippi Termination of Parental Rights Law provides no statutory process for coordination between the actions of the youth court and the chancery court, which are two distinct courts with two different judges, respecting the status of such a child or the eligibility of the child for adoption. A potential adoption proceeding is further complicated by the fact that youth court proceedings and records are confidential, although a youth court can order the disclosure of youth court records to a court in which an adoption is pending if the youth court determines that disclosure is required in the best interests of the child. *See* Miss. Code Ann. § 43-21-251; Miss. Code Ann. § 43-21-261(1)(b) (Rev. 2015). As it stands, the chancery court, which is the court with constitutional jurisdiction over adoptions, must dismiss any adoption petition concerning a child under the jurisdiction of a county court that sits as a youth court in an abuse or neglect proceeding.

¶42. Youth courts serve an important judicial function in adjudicating abuse or neglect proceedings. But the legislature cannot expand youth court jurisdiction in a way that encroaches upon the chancery court's constitutional jurisdiction over the distinct subject matter of adoptions. I would hold that Section 93-15-105(1), which purports to divest the chancery court of jurisdiction until and unless the youth court has terminated parental rights, is constitutionally infirm. Therefore, I would reverse the decision of the chancery court and remand for further proceedings regarding the adoption petition filed by M.A.S.

**KING, J., JOINS THIS OPINION.**